Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

Richmond Division

FILED
MAY 2 4 2021
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

Christine L. Anderson

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Aetna Resources, LLC,
CVS Health Incorporated, William Seabolt

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case No. 3:21cv334
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑ Yes ☐ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I. **The Parties to This Complaint**

A. **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Christne L. Anderson |
| Street Address | 8007 Hampton Station Court |
| City and County | Chesterfield/Chesterfield County |
| State and Zip Code | Virginia 23832 |
| Telephone Number | 954-829-7389 |
| E-mail Address | myanne33338@gmail.com |

B. **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

- Name: Aetna Resources, LLC
- Job or Title *(if known)*:
- Street Address: 9881 Mayland Drive
- City and County: City of Richmond, Henrico County
- State and Zip Code: Virginia 23233
- Telephone Number: 804-968-7236/ 800-872-3862
- E-mail Address *(if known)*:

Defendant No. 2

- Name: CVS Health Incorporated
- Job or Title *(if known)*:
- Street Address: 9881 Mayland Drive
- City and County: City of Richmond, Henrico County
- State and Zip Code: Virginia 23233
- Telephone Number: 804-968-7236/ 800-872-3862
- E-mail Address *(if known)*:

Defendant No. 3

- Name: William Seabolt
- Job or Title *(if known)*: Chief Medicare Officer
- Street Address: 9881 Mayland Dr.
- City and County: City of Richmond, Henrico County
- State and Zip Code: Virginia 23233
- Telephone Number: 804-527-7484 / 440-864-9389
- E-mail Address *(if known)*: SeaboltW@aetna.com

Defendant No. 4    See statement

- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address *(if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Aetna Resources LLC |
| Street Address | 9881 Mayland Dr. |
| City and County | Richmond  Henrico |
| State and Zip Code | Virginia  23832 |
| Telephone Number | 804-968-7236/ 800-872-3862 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

[x] Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ] Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

[ ] Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[x] Other federal law *(specify the federal law)*:
The Family and Medical Leave Act of 1993, as codified, 29 U.S. Code § 2601. Procedure for Prevention of Unlawful Employment Practices, as codified, 42 C.F.R. § 1601.12b.

[x] Relevant state law *(specify, if known)*:
EEOC employment laws prohibiting discrimination, retaliation, wrongful termination
Code of Virginia at §2.2-1201(9), Evaluation of Employment Opportunities; Unemployment Insurance Integrity Act

[ ] Relevant city or county law *(specify, if known)*:

Type text here

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☒ Termination of my employment.
- ☒ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☒ Other acts *(specify)*: Mental stress, anxiety, depression, fear, & threats.

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
**See statement of Facts**

C. I believe that defendant(s) *(check one)*:
- ☐ is/are still committing these acts against me.
- ☒ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- ☐ race ____
- ☐ color ____
- ☒ gender/sex    **See statement of Facts**
- ☐ religion ____
- ☐ national origin ____
- ☐ age *(year of birth)* ____ *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*

E. The facts of my case are as follows. Attach additional pages if needed. **See statement of Facts**

Statement of Facts

**Charge of Employment Discrimination Particulars**

I, Christine Anderson, of Chesterfield, Virginia, submit the following Charge of Discrimination against Aetna, Inc., a CVS Health Company, pursuant to 42 C.F.R. § 1601.12(b), and state as follows:
1. I began my employment with Aetna, Inc., a CVS Health Company ("Aetna"), on April 11, 2016 as a Sales Manager. I came to Aetna with over 30 years of experience in sales, having most recently been a Regional Sales Director for UnitedHealth Group. I am 58 years old.

2. Throughout my employment with Aetna, I was an exemplary employee, receiving all positive performance evaluations and numerous awards, including bonuses, and special recognition through the STIR program.

3. William Seabolt (Caucasian male), General Manager, was my supervisor and the lead of the sales team. In or around June of 2019, Jonathan Lowe (Caucasian male), Director of Sales, became my direct supervisor.

4. At the time of my hire in 2016, Mr. Seabolt recognized that I was overqualified for the Sales Manager position, having held several higher management level positions previously. I accepted a lower-level position at Aetna because I was previously employed by Aetna and respected the company. As a result of my qualifications, Mr. Seabolt and I had a discussion regarding my interest in advancement opportunities, with Mr. Seabolt assuring me that there would be room for advancement on the sales team.

5. Beginning shortly after my employment, and continuing until my termination, I both witnessed and personally experienced a culture created by Mr. Seabolt (and continued by Mr. Lowe) of discrimination against women and minorities. I made several reports to the Aetna's Ethics Hotline to report these actions. It was soon afterwards Mr. Seabolt, began to ignore my requests to discussion promotion opportunities. I discovered HR reported my concerns to Michael Bucci, Mr. Seabolt's supervisor. Mr. Seabolt later stated that Mr. Bucci had his back if anyone thought to report anything further.

6. Caucasian male colleagues were routinely given advancement opportunities and promotions, as described below, while I was made to feel like I had no right to seek professional advancement within Aetna. With each passing promotion and advancement opportunity, I was made to feel through conduct and comments that I should be "thankful" I was not selected because the position involved so much travel or was "very difficult." The message sent to me was that I was not capable of performing these roles. Mr. Seabolt told me I was selfish when I gave salary expectation for a position, which were inline with role.

7. Additionally, when male colleagues disagreed or questioned Mr. Seabolt, their concerns were heard by him without repercussion or comment. When I or other female employees on the sales team voiced any sort of constructive feedback or asked questions, Mr. Seabolt commented that I was "coming on too strong," and that I was "disruptive." Following these comments, male colleagues told me that they disagreed with Mr. Seabolt's characterization. Mr. Seabolt made similar comments towards other female employees.

8. I was told that I should "watch my back." Mr. Seabolt also remarked that he "didn't want to hear from me." Mr. Seabolt consistently disregarded contributions of female employees, including myself, but valued contributions of male employees.

9. As a result of Mr. Seabolt's conduct, several team members, in addition to myself, complained about discrimination by Mr. Seabolt. One employee went out on medical leave. Several female employees and a male employee of color left employment as a result of Mr. Seabolt's conduct. To my knowledge, nothing was done in response to these complaints to HR.

10. In February of 2019, when sales numbers began declining, Mr. Seabolt commented to the sales team, "just so you know my boss has my back, and someone will get their head chopped off."

11. On March 29, 2019, I interviewed for the first time for the role of Director of Sales at Aetna. I had four (4) interviews for the position in total. It was a role that needed to be filled immediately, but Mr. Seabolt informed Mr. P. Randy Philip Jr. January, that he would be let go in. It was to be kept a secret until March 1. Mr. Lowe was not hired until I believe July. He was let go the following year because he was not able to achieve the objectives.

12. On May 3, 2019, I again contacted the Ethics Hotline, about sex discrimination and race discrimination. I relayed my concerns about Mr. Seabolt's discriminatory behavior and comments as described above, as well as the high turnover on the sales team and low morale. Despite being told Mr. Seabolt would not be informed of my complaint, I have reason to believe that Mr. Seabolt was aware that I complained. Shortly after my complaint, I informed Michael Bucci, President, that I complained about Mr. Seabolt. After I told Mr. Bucci, I noticed a stronger hostile treatment towards me by Mr. Seabolt. Additionally, two of my male colleagues told me that I "had a target on my back."

13. On May 23, 2019, I was informed that I was not selected for the role. I was told that Mr. Seabolt decided to go with another candidate because of the candidate's leadership experience and background. I was also told that Mr. Seabolt said "this guy seemed like the right fit." I learned soon after that the individual selected was Mr. Lowe, an external candidate. Internal candidates like me are supposed to have priority over external candidates.

14. Despite being more qualified, Mr. Lowe was selected as Director of Sales. My educational background, industry-wide experience, Aetna-specific experience, and management experience surpassed Mr. Lowe's. For example, while Mr. Seabolt allegedly selected Mr. Lowe because of his leadership experience, Mr. Lowe's highest position held was a Regional Manager position with his previous employer with no direct reports. Despite the "Manager" title, Mr. Lowe had no actual supervisory experience. In contrast, I was a Regional Director over nine (9) states with my previous employer, and had numerous direct reports and substantial supervisory experience. Mr. Seabolt also commented about his selection of Mr. Lowe that it was "all about recruitment." However, Mr. Seabolt acknowledged to me previously that I was the best recruiter on the sales team, and had the most knowledge about the market and the sales agents. I was asked earlier in the year by Mr. Bucci and Mr. Hayden to recruit agents for other broker managers. These were positions I was denied. I was asked to do this in addition to my existing role for compensation that equated to less than I was already making.

15. When I questioned Mr. Seabolt about this position, I was told that I "should just be happy that I have a job." When I mentioned that he called me selfish for salary requests he had wanted from me. I said that was insulting and would he have asked it of a man? His response was dismissive. I also reminded him, he said I would be considered for a few different positions where he was listed as the hiring manager and I was not even notified or given an interview.

16. On May 29, 2019, I complained again to the Ethics Hotline regarding retaliation by Mr. Seabolt and Mr. Bucci (who also participated in the interview process). Shortly thereafter, on or about June 3, 2019, I formally identified myself as the one making the complaint. I asked that Aetna's legal department contact me. My plan was to begin a case then. I never heard from them.

17. On August 1, 2019, I spoke with Cheryl McLeod, Human Resources, regarding my most recent Ethics Hotline complaint. I was told that Human Resources would be performing an investigation and that it would follow up with me regarding the results of the investigation.

18. Soon after Mr. Lowe being hired in June/July we discussed my desire to become the broker manager for the Roanoke region. Mr. Lowe stated he had full authority to hire me, even if I lived in Chesterfield because there would not be any restrictions on travel. It was later in September that Mr. Lowe stated Mr. Seabolt and a panel would have to conduct the interview and outside candidates would be considered.

19. In August of 2019, I learned that a Broker Manager role was available in the Roanoke region. On or around August 29, 2019, before the role was posted, I expressed my interest in the position to Mr. Lowe. Mr. Lowe responded that he "could not go into specifics," but that the Broker Manager position would not be posted, and that it was predetermined that my male colleague Joel would be assigned the Roanoke region. I inquired about Broker Manager opportunities in both the Richmond and Tidewater regions, and was told that both would go to Joel as well.

20. During this time, Mr. Lowe referred to me as "honey" and "darling," and was condescending toward me.

21. On September 3, 2019, Mr. Lowe announced that he would be posting the Broker Manager role for the Roanoke region in December 2019 or January 2020. Mr. Lowe commented that the role would be given to "someone new" outside of Aetna, making clear that even if I applied for the role, I would not be considered.

22. Just prior to filing for leave I attempted to meet/speak with Mr. Lowe about some compliance concerns over procedures and processes not being followed. He continuously canceled or did not show for those meetings. I made one additional attempt to meet and he refused to meet. I told him I felt I had no choice but to speak with Human Resources. Mr. Lowe responded, "you better not because I have complaints about you."

23. I am aware that younger, less qualified female external candidates were hired to fill some of the Broker Manager roles. These candidates were not as qualified as I was. One of these candidates had no college degree. Another had no Medicare experience. One was hired as a favor to Mr. Bucci as stated by Mr. Seabolt and another Director.

24. On September 18, 2019, I complained again about sex discrimination and retaliation by Mr. Seabolt and Mr. Lowe. I reported the threatening comment that Mr. Lowe made to me, that I was passed up again for advancement opportunities in the Broker Manager roles, and that Mr. Lowe was calling me "honey" and "darling."

25. On September 19, 2019, as a result of the extreme stress and anxiety I was under at work, I physically collapsed while working. After evaluation by my physician, I was advised to take medical leave until my condition improved. I was diagnosed by my medical provider with anxiety and depression.

26. While I was out on medical leave, I was forced to make numerous phone calls to my FMLA representative regarding my leave approval and status. My representative consistently failed to return my calls. The management of my leave from Aetna did not improve, despite my complaints that my job was being placed at risk due to the FMLA representative's failure to communicate appropriately with me. I also attempted to view Aetna's system to complete my annual enrollment for insurance as required by CVS and review my FMLA and Short-Term Disability claims to see if documentation was needed and/or received but Mr. Lowe instructed IT to not allow me in the system and report any time I was attempting to get into the system and how many times I had previously gained access. Mr. Lowe never notified me that he would be cutting off my access. He never called about my condition or return to work. One time I contacted Mr. Lowe about my return to work. He responded that I had several weeks and not worry. No need to contact him because STD/FMLA would contact him. This added to my anxiety for retaliation.

27. On January 21, 2020, I returned to work to discover that I was locked out of the Aetna system. I contacted the IT help desk (SPOC) who was able to get me access to the system. After gaining access, I contacted Mr. Lowe to let him know that I had returned and was going through prior emails to get caught up. Mr. Lowe had an out-of-office email message up, so I called his work voicemail and left a message.

28. At the end of the day on January 21, 2020, Mr. Lowe returned my call, and was upset and hostile towards me. Mr. Lowe angerly, told me that I was not allowed to return to work because he had not received any notice from Human Resources approving my return, despite me never being provided with this information. Following our call, I contacted Aetna who stated that no return-to-work notice was needed under company FMLA policy, and that all I needed to do was return to work.

29. On January 22, 2020, Ms. McLeod called me and said that Mr. Lowe was not aware of the company's return to work procedures. Ms. McLeod also said that as a result of Mr. Lowe's schedule, Mr. Lowe was unable to address my return to work until February 3, 2020, at which time he would welcome me back and call me to give me instructions on my job. Ms. McLeod assured me that this period of time was job protected, and would be paid.

30. On January 24, 2020, I spoke with Ms. McLeod about my Ethics Hotline complaints. I was told that some of the information that I provided in my first complaint in May 2019 was corroborated, but that all of the complaints were since closed.

31. Mr. Lowe never contacted me pursuant to Ms. McLeod's instructions. As a result, on February 3, 2020, I returned to work by attempting to access my computer. My access was again denied, so I contacted the IT help desk (SPOC). The help desk informed me that an "xt" was placed next to my name, indicating that I was not an active employee. The help desk also confirmed that my access was being denied by Mr. Lowe. They went on to say they would assign this incident a ticket to look into the matter, and that Mr. Lowe would be notified that action is required on his part. I later discovered through HR that on February 3, 2020 Mr. Lowe called HR for instructions to address my inability to get on the system and return work.

32. Following that conversation, I contacted Human Resources. I was informed that Mr. Lowe had not released me to return to work and that he would be informed to contact me.

33. In the morning on February 4, 2020, I had not received a return call from Mr. Lowe or Human Resources so I attempted to gain access to the system and was again denied. I then contacted the Ethics Hotline and Human Resources to seek instruction and to state that I feared I was being retaliated against. I also called Mr. Lowe twice and left two voicemail messages.

34. I feared retaliation because the culture on the sales team, as created by Mr. Seabolt and Mr. Lowe, was negative towards employees with medical conditions requiring leave.

35. In the afternoon on February 4, 2020, Mr. Lowe called me and said that I never attempted to return to work on February 3, 2020, and therefore I would be considered as having voluntarily resigned my employment with Aetna. I said that I had attempted to return based on the instructions given to me by FMLA and Human Resources, and that he denied my access. He responded that I was required to call him but that I did not. He also stated I would receive a letter based on instructions given to him by Human Resources. When I asked who in Human Resources instructed him, Mr. Lowe said that this call is terminated and hung up on me.

36. February 5, 2020 I received a letter that only listed Ms. McLeod from Employee Relations, but was solely written by Mr. Lowe.

37. Ms. McLeod called me February 6, 2020 and stated she knew nothing of Mr. Lowe's call to me or of the letter.

38. Aetna has failed to meaningfully address my complaints of workplace discrimination and retaliation as, upon information and belief, no discipline has been levied against Mr. Seabolt or Mr. Lowe. Moreover, following my legitimate complaints, I was not hired for the positions of Director of Sales and Broker Manager, despite my qualifications, tenure, and positive performance. Aetna also interfered with my ability to return to work following medical leave. Despite complying with all instructions, Aetna unlawfully terminated my employment.

39. Upon information and belief, Aetna discriminated against me on the basis of my sex, retaliated against me with denying promotions, telling me not make suggestions to corporate suggestion teams on new innovations, even after corporate awarded me for these ideas, threatening me with disciplinary actions if I reported their harassment or compliance concerns, they also jeopardized my ability to be compensated for disability, and a legal return to work via FMLA. Aetna also retaliated against me following my legitimate complaints of workplace discrimination and retaliation. Aetna also had an obligation to maintain a work environment free from discrimination and harassment, which it failed to do.

40. I have been given high performance reviews from Mr. Philip my original director. I discovered later that Mr. Lowe attempted to change those reviews. I assume to build a case to get rid of me. I have received numerous awards from Aetna and CVS corporate before and after Mr. Seabolt said I was never to submit ideas again.

**Relief Requested**
Because Aetna discriminated, retaliated, and created a hostile work environment against me based on my sex, violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17, The Family and Medical Leave Act of 1993, as codified, 29 U.S. Code § 2601. Procedure for the Prevention of Unlawful Employment Practices, as codified, 42 C.F.R. § 1601.12(b). I respectfully request that the Courts issue a CAUSE finding against Aetna and CVS, and that it assist me in obtaining all relief necessary to compensate me for the damages caused to me and which the Courts finds necessary to prevent future violations of Title VII, as codified, 42 U.S.C. §§ 2000e to 2000e-17.The Family and Medical Leave Act of 1993, as codified, 29 U.S. Code § 2601. Procedure for the Prevention of Unlawful Employment Practices, as codified, 42 C.F.R. § 1601.12(b).

Respectfully Submitted,

*Christine L. Anderson* (signature)

Christine L. Anderson

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

### IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

03/16/2020

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☒ issued a Notice of Right to Sue letter, which I received on *(date)*  02/25/2021  .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

### V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

I am asking for CVS/Aetna to compensate me $85,000 in estimated wage-based damages (comprising differential pay, back pay, and front pay);
I am asking for CVS/Aetna to compensate me $200,000 in compensatory damages;
I am asking for CVS/Aetna to compensate me all attorneys' fees.
I am asking for a letter from CVS/Aetna with a reference as an employee in good standing to any future employment verification and represent in my file that I was laid off and I am eligible for rehire.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 05/16/2021

Signature of Plaintiff: *[signature]*
Printed Name of Plaintiff: Christine L. Anderson

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address